UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RODNEY L. BUCK,

Plaintiff,

v. Case No. 1:21-cv-883

COMMISSIONER OF SOCIAL SECURITY, Hon. Ray Kent

Defendant,
_________________________________/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) which denied his application for disability insurance benefits (DIB).

On May 20, 2019, plaintiff filed an application for DIB alleging a disability onset date of April 1, 2018. PageID.42. Plaintiff identified his disabling conditions as: weakness; chronic pain in the toes, lower back, fingers, and shoulders; and osteoarthritis. PageID.205. Prior to applying for DIB, plaintiff completed the 12th grade and had past relevant work as a general machine operator. PageID.49, 206.[1] An administrative Law Judge (ALJ) reviewed plaintiff's application de novo and entered a written decision denying benefits on September 17, 2020. PageID.42-50. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

[1] Plaintiff stated that he attended special education classes for four years. PageID.206.

## I. LEGAL STANDARD

"The federal courts review the Commissioner's factual findings for substantial evidence and give fresh review to its legal interpretations." *Taskila v. Commissioner of Social Security*, 819 F.3d 902, 903 (6th Cir. 2016). This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, -- U.S. --, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence, this Court has said, is more than a mere scintilla. It means — and means only — such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citations omitted).

A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health and Human Services*, 925 F.2d 146 (6th Cir. 1990). The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). "If the [Commissioner's] decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 286 (6th Cir. 1994).

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

## II. ALJ's DECISION

Plaintiff's application for DIB failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff has not engaged in substantial gainful employment since the alleged onset date of April 1, 2018, and meets the insured status requirements of the Social Security Act through December 31, 2023. PageID.44. At the second step, the ALJ found that plaintiff had severe impairments of: osteoarthritis of the bilateral shoulders and hands; lumbar and cervical degenerative disc disease; and chronic obstructive pulmonary disease (COPD). *Id*. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.46.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can stand or walk for up to 4 hours per 8-hour workday, and sit for up to 6 hours in an 8-hour workday, with normal breaks. Can lift up to 20 pounds occasionally and lift and carry up to 10 pounds frequently; the claimant can never climb ladders, ropes or scaffolds and never crawl; the claimant can occasionally climb ramps and stairs, and occasionally balance, stoop, crouch, or kneel; with bilateral upper extremities, the claimant can occasionally reach overhead, and frequently reach in all other directions; can frequently finger with bilateral hands; the claimant can have occasional exposure to extreme cold, extreme heat, and humidity; the claimant can have occasional exposure to pulmonary irritants such as fumes, noxious odors, dusts, mists, gasses, and poorly ventilated areas; the claimant can have occasional exposure to hazards, such as moving mechanical parts or unprotected heights; the claimant is able to understand, remember, and carry out simple and routine tasks; the claimant requires a work environment free of fast paced or timed piece rate production work, but can meet end of day goals.

*Id*. With respect to restricting plaintiff to simple and routine tasks, the ALJ noted that:

> The afforded limitations as to simple routine tasks and lack of fast pace production are based upon the claimant's pain complaints. Said limitations are not due to diagnosed mental health or cognitive limitations.

*Id*. at fn. 3. The ALJ also found that plaintiff is unable to perform any past relevant work. PageID.49.

At the fifth step, the ALJ found that plaintiff could perform a significant number of unskilled jobs at the light exertional level. PageID.49-50. Specifically, the ALJ found that plaintiff could perform the requirements of occupations in the national economy such as: hand packager (87,000 jobs); small products assembler ("1115,000" jobs) (the vocational expert (VE) testified as to 115,000 jobs, PageID.91); and stock checker (42,000 jobs). PageID.50. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from April 1, 2018 (the alleged onset date) through September 17, 2020 (the date of the decision). *Id*.

## III. DISCUSSION

Plaintiff contends that residual functional capacity (RFC) findings are not supported by substantial evidence and that the hypothetical questions posed to VE were flawed.

### A. The ALJ's finding that the opinion of plaintiff's treating physician's assistant was not persuasive is not supported by substantial evidence or properly articulated.

For claims filed on or after March 27, 2017, the regulations provide that the Social Security Administration (SSA) "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). In these claims, the SSA "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the claimant's] record." 20 C.F.R. § 404.1520c(b). In addressing medical opinions and prior administrative medical findings, the ALJ will consider the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *See* 20 C.F.R. § 404.1520c(c)(1)-(5).

The most important factors which the ALJ considers in evaluating medical opinions are "supportability" and "consistency":

> Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

20 C.F.R. § 404.1520c(b)(2).[2] If the ALJ finds that two or more medical opinions "are both equally well-supported and consistent with the record but are not exactly the same," the ALJ must articulate what factors were most persuasive in differentiating the opinions. 20 C.F.R. § 404.1520c(b)(3) (internal citations omitted).

In addition, the new regulations recognize that "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(1). Thus, "when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." *Id.* "We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually. *Id.*

---

[2] The regulations explain "supportability" as follows: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). The regulations explain "consistency" as follows: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

Plaintiff contends that the ALJ's finding that he could lift more than 10 pounds is not supported by the record. This is significant because plaintiff was more than 50 years old on his alleged disability onset date of April 1, 2018. Plaintiff's medical provider, Gina Stiver PA-C, opined that plaintiff could lift no more than 10 pounds, which meant that plaintiff would be limited to sedentary work (lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools, 20 C.F.R. § 404.1567(a)). Given plaintiff's age, education, previous work experience, and limitation to sedentary work, he would be disabled under Medical Vocational Rules 201.09 and 201.10, 20 C.F.R. Part 404, Subpt. P, Appx 2.[3] As discussed, the ALJ limited plaintiff to light work (lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds, 20 C.F.R. § 404.1567(b)). Given this limitation, the ALJ found that, "[i]f the claimant had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed by Medical-Vocational Rule 202.14." PageID.50.

Plaintiff contends that the ALJ's finding that Ms. Stiver's opinions were unpersuasive is not legally sound or supported by the evidence. The ALJ addressed Ms. Stiver's opinion as follows:

> I find the assessments of Gina Stiver, PA-A [sic] to be unpersuasive (Exhibit 13F; 14F; 17F/6-7). Ms. Stiver reports that the claimant has significantly debilitating problems that render him unable to maintain full or part-time employment, with impeded mobility, impeded ability to lift more than ten pounds occasionally, unable to remain seated and unable to ambulate for long, unable to work for one third of an eight hour workday, and that the claimant is without fine motor skill use due to his tremors. I find said assessments inconsistent with and unsupported by a clinical record that, as discussed above, fails to document

[3] The medical-vocational guidelines or grids "take account only of a claimant's 'exertional' impairment, that is 'an impairment which manifests itself by limitations in meeting the strength requirements of jobs[.]' 20 C.F.R., Part 404, Subpt. P, App. 2 § 200.00(e)." *Abbott*, 905 F.2d at 926. An ALJ may use the grids, rather than expert testimony, to show that a significant number of jobs exist in the economy when the claimant's characteristics fit the criteria of the guidelines. *Siterlet v. Secretary of Health and Human Services*, 823 F.2d 918, 922 (6th Cir. 1987). *See Bohr v. Bowen*, 849 F.2d 219, 221 (6th Cir. 1988) ("the grids are a shortcut that eliminate the need for calling in vocational experts").

> significant focal or neurological deficits. While the record contains 2020 documentation as to essential tremors, as discussed previously, the claimant's medications have shown improvement to such and the record fails to support the durational requirement of a "severe" tremor disorder. Ms. Stiver's report as to impeded mobility appears to based upon the claimant's subjective reports, as the record, as discussed above, routinely and consistently documents a normal gait. Consequently, Ms. Stiver's assessments are found unpersuasive.

PageID.48-49.

In her opinion letter dated July 22, 2020, Ms. Stiver stated that an MRI of plaintiff's cervical spine on March 6, 2020, demonstrated neck arthritis; that an MRI of his left shoulder on that date showed AC joint arthrosis, glenohumeral arthrosis, biceps tenosynovitis, and a very low-grade insertional tear of supraspinatus tendon; and, that this resulted in a decreased active range of motion and lifting ability in his bilateral shoulders. PageID.637. Due to these conditions, plaintiff reported that he is unable to stand, ambulate, or sit for extended periods of time. *Id*.

Ms. Stivers also reported that plaintiff has significant problems with tremors:

> At his last appointment he had a very noticable [sic] essential tremor. This appears to be progressively worsening despite treatment. It is so significant that Mr. Buck's upper extremities were uncontrollably shaking at one point during our conversation. He was seen by Dr. Fayyaz Mahmood at Ascension Borgess Neurology office on 6/26/2020. Dr. Mahmood reported that Mr. Buck does have a debilitating essential tremor. This included a low amplitude, back-and-forth head shaking that increases with concentration. Medium amplitude, faster, bilateral hand shaking that worsens with fine motor skills. He was unable to draw a spiral swath line during that appointment. During several appointments he has had trouble completing questionnaires by hand because his upper extremities are shaking so significantly. His signature is far from legible due to his essential tremor as well. He even reports that he has trouble with eating at times because any fine motor skill exacerbates his symptoms.
>
> Based on this, I do not believe that Mr. Buck is able to lift more than 10 pounds at a time for more than on an occasional basis. Additionally, I do not feel that he is capable of working for one third of an eight hour day at least 5 shifts per week.

*Id*.

Ms. Stivers gave additional opinions in a statement given to plaintiff's counsel. With respect to the lifting limitation, Ms. Stiver stated the plaintiff is limited to 10 pounds lifting and carrying for a maximum of two or three hours per day "based on everything he has going on." PageID.638. Ms. Stiver further stated:

> He has had multiple imaging done; on 3/6/2020 he did have a cervical spine MRI that I mentioned in the letter that had some pretty extensive findings that needs to be addressed by neurosurgery. He is following with an orthopedic surgeon for the bilateral shoulder arthritis and problems and he is not really able to lift his hands up above his head because of that. And then he has got the arthritis in the neck that can make it very hard for him to lift things. He has arthritis in the lower back as well which would impede his ability to lift anything probably more than about 10 pounds at a time.

*Id.*

With respect to the tremors, Ms. Stiver stated:

> His essential tremor has progressed so much that I just don't think that he would be able to do any fine motor skills as far as any job that would include that The essential tremor actually gets worse when he does any fine motor activities and that would include his upper bilateral extremities and his head and then based on his arthritis and his chronic aches and pains he is not able to sit for an extended amount of time and he has to get up and walk around to try to help alleviate some of that pain. And that being said, his arthritis is pretty significant, so you know getting up and around and moving causes that to become worse too. So, he does have to frequently sit back down and change positions frequently.

*Id.*

Based on the record in this case, the Court concludes that the ALJ did not meet the articulation requirement under the regulations. The ALJ's review of the medical evidence (PageID.44-45, 47-48) lacked specificity. Ms. Stiver's opinion regarding the 10-pound lifting limitation is based upon a combination of factors, including plaintiff's arthritis and tremors. The ALJ does not explain the objective medical evidence which she relied upon to find that Ms. Stiver's opinion was not persuasive. Finally, in addressing Ms. Stiver's opinion that plaintiff has essential tremor, while the ALJ found that the record fails to support the durational requirement of a

"severe" tremor disorder, the ALJ also noted that plaintiff mentioned tremors as early as December 2018. PageID.45, fn. 1.[4] Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Ms. Stiver's opinion, giving special attention to her opinions regarding plaintiff's ability to lift anything more than 10 pounds.

**B. The ALJ's finding that the non-examining DDS physician opinion was persuasive is not supported by substantial evidence.**

Plaintiff contends that the ALJ improperly found the opinion of non-examining State Agency physician Dr. Reuben Henderson to be persuasive. The ALJ addressed Dr. Henderson's opinion as follows:

> I find the assessment of the State agency medical consultant, Dr. Henderson, to be persuasive (Exhibit 1A). Doctor Henderson, a physician consultant who has knowledge and experience evaluating Social Security disability claims, opined that the claimant is capable of a similar less than the full range of the light exertional level as found assessed herein. Said assessment is consistent with the lack of focal or neurological deficit documented within the claimant's clinical record, as well as his conservative history as to modalities of treatment. Finally, no other physician has opined as to necessity of greater limitations[.]

PageID.48.

Plaintiff points out that Dr. Henerson's assessment did not include a review of some records generated before he signed the assessment on August 21, 2019 (PageID.107-108).[5] Here,

---

[4] The ALJ also relies on the agency's durational requirement as a reason to find Ms. Stiver's medical opinions unpersuasive. *See* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement."). This regulation is not objective medical evidence. It is unclear to the Court as to how this regulation can form the basis for finding that Ms. Stiver's medical opinions are unpersuasive.

[5] In his initial brief (ECF No. 9, PageID.686 fn. 5) plaintiff stated that,

"Although Dr. Henderson gave his opinion in August 2019, there is no reference to the January 2019 MRI results for Mr. Buck's shoulder and neck. (PageID.521, 523) It appears he did not have those documents and that he only considered the medical evidence included as Exhibits 1F through 3F (PageID.278-386). (See, PageID.104-07, 113)[.]"

the ALJ did not explain the objective medical evidence which supported her conclusion that Dr. Henderson's opinion was persuasive. Accordingly, this matter will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Henderson's opinion in light of the entire record.

**C. The residual functional capacity (RFC) determination failed to consider the effects of all plaintiff's well documented impairments, as required by 20 C.F.R. § 404.1520a, 20 C.F.R. 404.1545, SSR 96-8p and SSR 85-15.**

**D. The ALJ failed to properly assess all the evidence and evaluate claimant's symptoms as required by 20 C.F.R. §404.1529 and SSR 16-3p.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. *See* 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The ALJ considers impairments that are both "severe" and "not severe", *see* 20 C.F.R. § 404.1545, "based on all the relevant medical and other evidence in [the claimant's] case record," 20 C.F.R. § 404.1520(e).

Here, the opinions of Ms. Stiver and Dr. Henderson set out the medical framework for plaintiff's impairments and the associated limitations which appear in the RFC. Because the Commissioner will need to re-evaluate those opinions on remand, the ALJ should also re-evaluate plaintiff's RFC to determine whether he has any additional restrictions.

**E. The hypothetical adopted by the ALJ is not supported by the VE's testimony.**

An ALJ's finding that a claimant possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that

the claimant has the vocational qualifications to perform specific jobs. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779.

Here, the ALJ based her conclusions on the second hypothetical question, which incorporated the physical limitations of the first hypothetical question and added mental limitations. PageID.90-92. Plaintiff points out that the hypothetical questions included an additional limitation regarding vibrating tools which was not found in the RFC, *i.e.*, "Cannot be, that is never be exposed or can never tolerate vibrations such as vibrating hand tools." PageID.91. The hypothetical questions also failed to include the complete RFC limitations regarding end of day goals, *i.e.*, that "the claimant requires a work environment free of fast paced or timed piece rate production work, but can meet end of day goals." PageID.46, 90-92.

The hypothetical questions posed to the VE did not accurately reflect the ALJ's RFC determination. As discussed, the Commissioner's re-evaluation of Ms. Stiver's and Dr. Henderson's opinions may alter the RFC. For these reasons, on remand, the Commissioner should obtain updated vocational evidence which is consistent with plaintiff's RFC.

**IV. CONCLUSION**

For these reasons, the Commissioner's decision will be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate the medical opinions of Ms. Stiver and Dr. Henderson, plaintiff's RFC, and

the vocational evidence. A judgment consistent with this opinion will be issued forthwith.

Dated: March 29, 2023

/s/ Ray Kent
RAY KENT
United States Magistrate Judge